2006 DSD 8

**J.P.C. (JUV), Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 05–3037**
**No. CR 01–30012.**

United States District Court,
D. South Dakota,
Central Division.

May 1, 2006.

Edward G. Albright, Assistant Federal Public Defender, Pierre, for Plaintiffs.

Jay P. Miller, Assistant U.S. Attorney, Pierre, for Defendants.

### ORDER AND OPINION

KORNMANN, District Judge.

[¶ 1] J.P.C. ("JPC"), then a juvenile, was on May 1, 2001, placed on probation until his 21st birthday. At that time, with a criminal history category of I and a total offense level of 14, his imprisonment guideline range as an adult would have been 15–21 months. He violated the conditions of probation and was taken into custody at age 19 by order of the court. He was held in a county jail (with adult offenders) until his dispositional hearing.

[¶ 2] On December 13, 2004, this court conducted a probation revocation dispositional hearing. A transcript of the dispositional hearing has been received in evidence in this proceeding and is on file. Nothing was discussed as to credit for time served. I assumed, however, that, like other prisoners, JPC would receive credit for time served. My assumptions, however, would be of no legal significance. His violations were Grade C. His criminal history category was I and his advisory guideline range on revocation was 3–9 months. JPC argued at the hearing that his statutory maximum was 30 months and probation contended it was 60 months since he was between 18 and 21 years of age at the time of the revocation hearing. JPC's probation was revoked and he was sentenced to 22 months of custody, thus making immaterial the dispute about the maximum sentence. The judgment was entered on December 13, 2004.

[¶ 3] The Bureau of Prisons ("BOP") took custody of JPC and placed him at a lock-down juvenile facility in North Dakota. At some point, BOP advised JPC that he would not receive any credit for the time he spent in federal custody awaiting his revocation dispositional hearing. That "lost credit" is apparently approximately two months. The Federal Public Defenders' office asked to be appointed to represent JPC and the office was appointed. They filed a petition (Doc. 1) pursuant to 28 U.S.C. § 2255, asking the court to order BOP to grant the "lost credit."

[¶ 4] BOP first claims that the court has no jurisdiction since the petition was filed pursuant to 28 U.S.C. § 2255. The claim is that the petition should have been filed pursuant to 28 U.S.C. § 2241 since JPC was in custody in North Dakota, thus mandating a filing in the District of North Dakota. This court, on April 18, 2006, issued a writ of habeas corpus (Doc. 16) pursuant to 28 U.S.C. § 2241(c)(5); the prisoner was brought to South Dakota for the evidentiary hearing and remains in custody here. Whether or not the original petition should have been filed pursuant to 28 U.S.C. § 2241, the issue is now moot. I do not intend to "duck the issue" by returning the prisoner to North Dakota so that one of the judges there can act. After all, I was the sentencing judge. Time is of the essence in this case. Otherwise, the questions presented may well become moot. Without the credit being granted, JPC is scheduled for release on July 18, 2006 (with credit for "good time"). I find that I have jurisdiction over the person and over the subject matter and that the petitioner is entitled to a ruling. There is now nothing inadequate or ineffective as to the § 2255 remedy. In the absence of such a finding, there would be no basis to proceed under § 2241.

[¶ 5] BOP at one time and for many years routinely granted credit to juveniles for time served during pre-trial and pre-hearing custody. The policy was changed to conform to an opinion by a district court, *United States v. D.H.,* 999 F.Supp. 748 (D.Vi.), *on reconsideration,* 12 F.Supp.2d 472 (D.Vi.1998). The district judge in the Virgin Islands was obviously very much offended by the violent criminal activity of the juvenile. He made the statement that it would be "obscene" to grant any credit. The basis for the court's ruling was that there would be "no sentencing disparity in such a crime since the juvenile would have received a greater sentence if an adult." None of this, however, is true here where we deal with a probation revocation case. Thus, the case from the Virgin Islands is entitled to no consideration here. It is not on point.

[¶ 6] It is clear, however, that BOP relied solely on this Virgin Islands case in changing policy. The change in policy did

not come about because of the federal agency examining statutes, conducting hearings, asking for comments, interpreting statutes, and independently setting policy after careful consideration. The District of Columbia witness for the BOP confirmed this during his testimony. Exhibit "A" to Doc. I also confirms this. Thus, no deference is due to the BOP change of policy. Even if it could be said that deference is due, I find, for reasons that will appear, that the revised BOP policy would not be a permissible construction of federal law. Deference is also not due since the prior policy has expired and no written policy is now in effect, as will be later explained in this opinion and order.

[¶ 7] Federal judges, probation officers, public defenders, and even U.S. Attorneys were not advised as to the BOP change in policy which apparently took effect on October 25, 1999. Not until soon after December 20, 2005, did BOP communicate anything to the federal judiciary. The letter from BOP Director Lappin with a date of December 20, 2005, is an exhibit in this case. So also is the memorandum from Leonidas Ralph Mecham dated January 3, 2006. It was shortly after the Mecham memorandum that I became aware of the BOP reversal of previous policy. As the memorandum states: "Unfortunately, BOP made these decisions without advance notice and without soliciting the views of the Judicial Conference, its Criminal Law Committee, the Administrative Office's Office of Probation and Pretrial Services, or chief probation and pretrial services officers." I add the statement that no one was timely advised after the change in policy as well. Any judge dealing with juveniles in the federal courts would want that information, of course. It would be ludicrous to think that judges would routinely be reading district court decisions from another district. Nor is there any evidence that Congress had any informa-

tion about the BOP reversal in policy. I doubt that any Senator, Member of Congress, or congressional staffer would be reading district court decisions. I reject all government arguments that Congress acted or failed to act with knowledge as to these questions involving juveniles. I also take judicial notice that very few federal judges deal with juvenile defendants, especially on a routine basis. In South Dakota, we do deal with these defendants on a regular basis.

[¶ 8] To make matters more confusing, I have looked at what are called "Operations Memorandum" which BOP apparently issues or plans to issue each year. Each year starting with 1999, these memorandums were issued. The last one is dated April 25, 2005, with a stated expiration date of April 25, 2006. That statement of policy has expired by its own terms. This latest memorandum states, *inter alia:* "Currently, Bureau of Prisons' policy allows for jail time credit to be applied to a JJDPA adjudication ordered committed to the 21st birthday. In light of the court opinion, *U.S. v. D.H.,* 12 F.Supp.2d (D.V.I. 1998), and other factors, the Bureau will no longer apply prior custody credit to Old Law or New Law adjudications imposed under JJDPA." This language is very confusing and contradictory. It is, of course, a misstatement to use the word "currently" year after year. BOP apparently has been applying the policy change whether or not the commitment is "to the 21st birthday." Obviously, the sentence as to JPC was beyond his 21st birthday. The memorandum does, however, later state that prior custody credit "will not be applied to New Law JJDPA adjudications imposed on or after October 25, 1999." In any event, we are now left with no effective written BOP policy as to these questions. There is therefore no evidence of

any agency policy to which deference could be given.

[¶ 9] I have also considered *Ray v. Carmona,* No. CV–04–1519–PHX–SMM (GEE), slip op. (D.Ariz., May 10, 2005), a case now on appeal to the Ninth Circuit. The former juvenile in that case spent more than 35 months in pre-disposition custody and was ultimately sentenced to 30 months concurrent detention (on two counts). Obviously, if the sentencing judge intended to take into account pre-disposition custody, the juvenile would have been sentenced to time served. It is clear that somehow the sentencing judge was fully aware of the BOP change in policy and pronounced the sentences having the change of policy in mind. *Carmona,* like the case from the Virgin Islands, did not deal with questions of revocation of probation or juvenile supervised release. It dealt only with the original sentence for the acts of juvenile delinquency.

[¶ 10] There is no claim by BOP that JPC had to exhaust any administrative remedies, an absolute fruitless endeavor in any event. The government has claimed that the court would be prohibited by Fed.R.Crim.P. 35 from hearing this case. I reject that claim. I am not imposing a new sentence or disposition. I am not changing anything that I did earlier.

[¶ 11] One of the issues is whether 18 U.S.C. § 3585 applies to a juvenile. I find that BOP regularly uses 18 U.S.C. § 3585(a) to calculate when a sentence commences, whether of an adult or a juvenile. Thus, they use part of the statutory provision. 18 U.S.C. § 3585(b) provides, *inter alia:* "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ..." Official detention would seem to mean being in custody pursuant to some official order. Certainly,

JPC was officially detained. He was not "unofficially detained." JPC was certainly a "defendant." The information (Doc. 1) filed by the government in CR 01–30012 called JPC a "defendant." The government argues that JPC did not receive a "sentence" and was not sentenced to a term of imprisonment. The judgment in CR 01–30012 was on a form approved by the Judicial Conference. The form itself is called "JUDGMENT IN A JUVENILE CRIMINAL CASE." The judgment specified on page one that the defendant "is *sentenced* as provided in pages 2 through 5 of this judgment (emphasis supplied)." On page 3, the defendant is told that, as to restitution, an "Amended Judgment in a Criminal Case" will be entered later. On page 4 we find this language: "... if this judgment imposes a *period of imprisonment,* payment of criminal monetary penalties shall be due during the *period of imprisonment* (emphasis supplied)."

[¶ 12] When probation as to JPC was revoked, another form was used entitled "JUDGMENT IN A JUVENILE CRIMINAL CASE." On page 1, we find this: "The defendant is *sentenced* as provided through page 3 of this Judgment (emphasis supplied)." The next sentence refers to "disposition." 22 months was a "term of imprisonment." JPC was a defendant. JPC served in official detention prior to being sentenced for the probation violations. JPC received a sentence. The claims of the government that JPC was not "sentenced" to a term of imprisonment are rejected. JPC was in jail with adult offenders while awaiting his dispositional hearing.

[¶ 13] The government attempts to distinguish between "official detention" and a "sentence of imprisonment." The claim is that a juvenile never receives a sentence of imprisonment. While technically correct, this claim is little to do about nothing.

Whether it is imprisonment or official detention, the defendant, brought back on an allegation of a probation or supervised release violation, is often in the same county jail serving under the same conditions as adult offenders. We are not talking here about juveniles facing the initial dispositional hearing and the requirements of detention under 18 U.S.C. § 5035. There is no such requirement for former juveniles who have come of age while under supervision.

[¶ 14] Would the BOP suggest that a juvenile would not be subject to 18 U.S.C. § 3553? We know it would not. Juveniles are subject to 18 U.S.C. § 3552, dealing with presentence reports. For what it is worth, some of these statutes are not found in the juvenile delinquency section of the code (Chapter 403).

[¶ 15] I am governed by the law in the Eighth Circuit, not the Virgin Islands or Arizona. The Court of Appeals for the Eighth Circuit seems to share the view that adjudications of juvenile delinquency are to be considered on equal footing with criminal convictions. In *United States v. R.L.C.*, 915 F.2d 320 (8th Cir.1990), *aff'd.,* 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992), the Court of Appeals noted that:

> Although an adjudication of juvenile delinquency under 18 U.S.C. § 5031 is a determination of status rather than a criminal conviction, *United States v. Frasquillo–Zomosa,* 626 F.2d 99, 101 (9th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980), *the Federal Juvenile Delinquency Act entitles a juvenile to all rights that would be accorded an adult in a criminal prosecution except the right to a grand jury indictment.* S.Rep. No. 93–1011, 93d Cong., 2d Sess. 38, *reprinted in* 1974 U.S.Code Cong. & Admin. News 5321. Because statutes imposing penalties on

juvenile delinquents involve deprivations of liberty similar to those attendant on criminal conviction, they should be construed no less strictly than statutes imposing criminal sanctions on adults.

915 F.2d at 325, n. 2 (emphasis supplied).

[¶ 16] The Arizona opinion makes much of the fact that Congress amended 18 U.S.C. § 5037(c) to add this language: "Section 3624 is applicable to an order placing a juvenile under detention." This made it clear that a juvenile is entitled to what is referred to as "good time credit." The Arizona opinion relied on the fact that Congress did not also add a reference to 18 U.S.C. § 3585(b). I know of no reason why Congress would have done that. Any such language would have been surplusage, given the clear meaning of § 3585(b) and its application to all defendants.

[¶ 17] Assuming, however, that § 3585(b), standing alone, does not refer to juveniles, we are still governed by the commands of 18 U.S.C. §§ 5037(c)(1)(C) and 5037(c)(2)(B)(iii). In other words, the "term for which official detention may be ordered for a juvenile found to be a juvenile delinquent may not extend ... beyond the lesser of ... the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult ..." The government argues that this language means the statutory maximum for the crime committed by the adult defendant. That, however, is not what the statute provides. Regardless of the sentence, an adult is clearly entitled to credit for time served. A juvenile is entitled to the same thing.

[¶ 18] The government argues in its answer here that the language quoted in the preceding paragraph refers to the statutory maximum to which a similarly situated adult defendant could be subjected, namely 15 years originally in this case. First, this argument ignores the importance of the

Federal Sentencing Guidelines in connection with the original "sentence." Second, we are not dealing with the original sentence but with what sentence can be imposed upon revocation. The juvenile in this case was sentenced, as previously noted, to 22 months of custody, based upon the revocation. The sentence was substantially above the advisory guideline range. We know, of course, that the guidelines have always been advisory in revocation cases, whether of adults or of juveniles.

[¶ 19] Whatever benefits the juvenile may have originally received as a result of his status has no relevancy when it comes to a revocation proceeding. He is at that point in the "same boat" as an adult violator. I reject the BOP argument to the contrary.

[¶ 20] We know also that, for what it is worth, juvenile "sentences" can come back to "haunt" juveniles who later find themselves accused of criminal conduct as an adult. Such dispositions are calculated in connection with the advisory guidelines.

[¶ 21] Having said all this, I fully realize that most of 18 U.S.C. § 5037 applies at the original dispositional hearing. However, 18 U.S.C. § 5037(d)(5) explicitly applies at a revocation hearing for a juvenile. This statutory provision includes this language: "If the juvenile violates ... the court may, after a dispositional hearing and after considering any pertinent policy statements promulgated by the Sentencing Commission pursuant to section 994 of title 18, revoke the term of supervision and order a term of official detention." There is important language which follows the quoted language. Before moving to that, I will discuss the quoted language.

[¶ 22] What "pertinent policy statements" must be examined? We turn to the policy statement on revocation of probation or supervised release, U.S.S.G. § 7B1.3(e). "Where the court revokes probation or supervised release and imposes a term of imprisonment, it shall increase the term of imprisonment determined under subsections (b), (c), and (d) above by the amount of time in official detention that will be credited toward service of the term of imprisonment under 18 U.S.C. § 3585(b), other than time in official detention resulting from the federal probation or supervised release violation warrant or proceeding."

[¶ 23] We next turn to application note 3 for a more detailed explanation of U.S.S.G. § 7B1.3(e):

Subsection (e) is designed to ensure that the revocation penalty is not decreased by credit for time in official detention *other than time in official detention resulting from the federal probation or supervised release violation warrant or proceeding. Example:* A defendant, who was in pre-trial detention for three months, is placed on probation, and subsequently violates that probation. The court finds the violation to be a Grade C violation, determines that the applicable range of imprisonment is 4–10 months, and determines that revocation of probation and imposition of a term of imprisonment of four months is appropriate. Under subsection (e), a sentence of seven months imprisonment would be required because *the Bureau of Prisons, under 18 U.S.C. § 3585(b), will allow the defendant three months' credit toward the term of imprisonment imposed upon revocation* (emphasis supplied)."

[¶ 24] To return now to the provisions of 18 U.S.C. § 5037(d)(5), we find this language: "The term of official detention which is authorized upon revocation of juvenile delinquent supervision shall not exceed the term authorized in section 5037(c)(2)(A) and (B), less any term of official detention previously ordered."

The government argues that this language refers to detention ordered initially at the original dispositional hearing. But the statute does not say that. It refers to "any term of official detention previously ordered." In the case of JPC, he was obviously in official detention ordered by the court based upon allegations that he had violated the conditions of his probation. It is not the function of this court to write the statutes. The language is clear and applies to JPC.

[¶ 25] BOP would violate the specific directives above by not granting the credit.

[¶ 26] We hear it said that the sentencing guidelines do not apply to juveniles. That statement is too limited, especially given the discussion above. In addition, we know that U.S.S.G. § 1B1.12, while acknowledging the general non-application, states: "However, the *sentence* imposed upon a juvenile delinquent may not exceed the maximum of the guideline range applicable to an otherwise similarly situated adult defendant unless the court finds an aggravating factor sufficient to warrant an upward departure from that guideline range. *United States v. R.L.C.*, 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992). Therefore, a necessary step in ascertaining the maximum *sentence* that may be imposed upon a juvenile delinquent is the determination of the guideline range that would be applicable to a similarly situated adult defendant (emphasis supplied)." The informal BOP policy would ignore statutes, the guidelines, and case law in and stemming from the Eighth Circuit.

[¶ 27] As set forth above, it is true that the maximum statutory sentence on revocation here was at least 30 months. Regardless what sentence was imposed, BOP cannot insist on a longer sentence for juveniles by giving credit to adults for time served while denying the credit to similarly situated juveniles. BOP has violated what would be a logical extension of the teaching of *United States v. R.L.C.*, 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992).

[¶ 28] I do not think we are dealing with any ambiguity. If we were, however, the venerable rule of lenity would mandate that the credit be given. *See, e.g. United States v. Bass*, 404 U.S. 336, 347–348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

[¶ 29] The court is deciding only whether the credit must be given. It is the responsibility of the BOP, at least in the first instance, to determine what the credit is. BOP should be required to forthwith make the calculations and enter a directive to be submitted to JPC and this court.

[¶ 30] Now, therefore,

[¶ 31] IT IS ORDERED, as follows:

1) The motion of the government to dismiss is denied.

2) The petition of JPC for a writ is granted.

3) The Bureau of Prisons shall forthwith and without delay calculate the credit to which JPC is entitled for time spent in official detention awaiting his probation dispositional hearing, providing notice in writing to this court and to JPC of the calculation of the credit and the anticipated release date.

4) The Bureau of Prisons shall then release JPC in accordance with its calculations.

5) This court retains jurisdiction pending the calculation and notice thereof.