D.P.S., Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 1:06–CV–046.

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 19, 2006.

## ORDER GRANTING PETITION FOR HABEAS RELIEF

HOVLAND, Chief Judge.

Before the Court is the Petitioner's Motion for Habeas Corpus relief under 28 U.S.C. § 2241, filed on October 19, 2005.[1] For the reasons set forth below, the petition is granted.

### I. BACKGROUND

The petitioner, a juvenile ("D.P.S."), is a juvenile inmate currently confined to the custody of the Bureau of Prisons at the Southwest Multi–County Correctional Center in Dickinson, North Dakota. On November, 2003, D.P.S. was charged with one count of assault with a dangerous weapon and one count of use of a firearm during a crime of violence.[2] D.P.S. was arrested on February 10, 2004, and released on his personal recognizance to the Glory House on February 24, 2004. The Glory House is a juvenile detention facility located in Sioux Falls, South Dakota. On March 18, 2004, an arrest warrant was issued for D.P.S. based on alleged violations of conditions of release, namely that he absconded from the Glory House. D.P.S. was arrested on March 31, 2004, and it appears that D.P.S. has remained in custody since the March 31, 2004, arrest. On April 5, 2004, D.P.S. was charged with two counts of possession of a controlled firearm, one count alleging possession of a shotgun with a barrel length of less than

1. The Petitioner originally filed a Motion to Vacate, Set Aside, and Correct Sentence Under 28 U.S.C. § 2255 in the District of South Dakota. However, as will be explained below, the Court will treat the petition as a motion for habeas corpus relief under 28 U.S.C. § 2241.

2. South Dakota file number 3:03–cr–30110–CBK–ALL

18 inches and another count alleging possession of a shotgun not identified by a serial number.[3] On June 17, 2004, D.P.S. pled guilty to all four counts. On October 25, 2004, D.P.S. was sentenced to 60 months in prison on all four counts with the sentences on all counts and in both files to run concurrently. The projected release date is April 19, 2009. It appears that D.P.S. was held in custody for more than seven months prior to the juvenile dispositional hearing.

On October 19, 2005, D.P.S. filed motions pursuant to 28 U.S.C. § 2255 in both files asserting that he should receive credit for time served prior to the dispositional hearing on October 25, 2004.[4] On April 18, 2006, Magistrate Judge Mark A. Moreno issued a Report and Recommendation. Magistrate Judge Moreno recommended, in part, that the matter be transferred to the District of North Dakota for consideration pursuant to 28 U.S.C. § 2241 because D.P.S. was in custody at a juvenile facility in Dickinson, North Dakota. On May 17, 2006, Federal District Judge Charles B. Kornmann issued an Order finding that D.P.S. was challenging the execution of his sentence pursuant to 28 U.S.C. § 2241 and that the matter should be transferred to the District of North Dakota. In addition, Judge Kornmann noted that at the time of the dispositional hearing, he assumed that, like other adult prisoners, D.P.S. would receive credit for time served. Judge Kornmann attached a copy of an order in another juvenile case he presided over wherein the issue of credit for time served was raised.

The case was received by the District of North Dakota on May 22, 2006. All of the petitions and briefs filed in the South Da-

kota cases were re-filed in the current case. The parties were given an opportunity to file supplemental briefings. Not surprisingly, the position of the parties has remained the same. D.P.S. asserts that he should receive credit for time in custody prior to the dispositional hearing and relies primarily upon a recent Ninth Circuit case, *Jonah R. v. Carmona*, 446 F.3d 1000 (9th Cir.2006) wherein the Ninth Circuit held that when Congress revised 18 U.S.C. § 3585 and the Federal Juvenile Delinquency Act in 1984, it intended for the BOP to continue to credit juveniles with time spent in pre-sentence custody. The Government argues that there is no statutory basis for granting juveniles credit for time served and that the Bureau of Prisons is the sole entity with the authority to calculate federal terms of imprisonment.

## II. *LEGAL DISCUSSION*

### A. *JURISDICTION*

■ Before discussing the merits of D.P.S.'s claim, a review of the jurisdictional basis is in order. As previously noted, D.P.S. initially filed a petition pursuant to 28 U.S.C. § 2255 in the District of South Dakota. Generally, federal prisoners and juvenile detainees must seek habeas corpus relief pursuant to 28 U.S.C. § 2255. However, in limited circumstances, federal prisoners and juvenile detainees may seek relief under 28 U.S.C. § 2241.

Relief under 28 U.S.C. § 2241 is permitted for actions involving the computation of credit for pretrial detention, good time, and those seeking to shorten court-ordered sentences that are administered by prison officials. *See Reno v. Koray*, 515 U.S. 50, 52–55 & n. 1, 115 S.Ct. 2021, 132 L.Ed.2d

---

**3.** South Dakota file number 3:04–cr–30032–CBK–ALL

**4.** The petition filed in regard to file number 3:04–cr–30032–CBK–ALL was assigned to

civil file number 3:05–cv–03033–CBK and the petition filed in regard to file number 3:03–cr–30110–CBK–ALL was assigned civil file number 3:05–cv–03032–CBK. The cases were later consolidated.

46 (1995) (adjudicating the merits of a federal prisoner's habeas corpus petition challenging the denial of credit toward service of prison term for pretrial period during which the prisoner was confined in a community treatment center, citing numerous cases involving similar claims); *Bell v. United States*, 48 F.3d 1042, 1043 (8th Cir.1995) (a prisoner's claim of improper denial of credit for time served "is not cognizable under section 2255" because he "is not contending that his conviction is illegal, he is only contesting the execution of his sentence;" "[the prisoner] could properly attack the execution of his sentence in a 28 U.S.C. § 2241(a) habeas petition"); *see also United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir.1989) ("a claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself;" judicial review is available under § 2241 in district of confinement, not § 2255 in district of sentencing); *United States v. Espinoza*, 866 F.2d 1067, 1069–71 (9th Cir. 1988) (claim for presentencing jail credits not cognizable in § 2255 action).

The distinction between relief sought under 28 U.S.C. § 2255 and 28 U.S.C. § 2241 was succinctly summarized by District of South Dakota Magistrate Judge Moreno in his Report and Recommendation issued in the South Dakota cases:

> Claims asserted by a prisoner/juvenile who challenges the legality of his/her detention must be filed by motion under § 2255 in the district that imposed the sentence/disposition, while claims that challenge the execution, or manner in which a sentence/disposition is actually served, must be made by petition and filed in the district were the prisoner/juvenile is confined.

*See* Docket No. 1–5. As Judge Kornmann found in his Order of May 15, 2006, D.P.S. is challenging the execution of his sentence, namely, the alleged failure of the Bureau of Prisons to give him pre-disposition credit for time served. Such a claim must proceed pursuant to 28 U.S.C. § 2241.

It is well-established that a claim brought pursuant to 28 U.S.C. § 2241 must be brought in the district where the individual is being held. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–47, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004); *Bell v. United States*, 48 F.3d 1042, 1043 (8th Cir. 1995); *United States v. Hutchings*, 835 F.2d 185, 186–87 (8th Cir.1987). It is undisputed that D.P.S. is currently in federal custody at a juvenile facility in Dickinson, North Dakota. Accordingly, the Court finds that its has jurisdiction over D.P.S.'s habeas corpus petition.

## B. *CREDIT FOR TIME SERVED*

The method for calculating credit for time served is set forth in 18 U.S.C. § 3585(b), which provides, as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed
>
> that has not been credited against another sentence.

Prior to 1999, the Bureau of Prisons consistently applied 18 U.S.C. § 3585(b) to juveniles when calculating their sentences. *See* Bureau of Prisons, *Sentence Computation Manual ("Old Law" -Pre CCCA–1984)*, Program Statement No. 58880.30, at XII–4 (July 16, 1993), *available at http:// www.bop.gov* (stating that "[p]resentence time shall be applied to a [juvenile's] sentence the same as for an adult ...").

However, the Bureau of Prisons changed its policy in 1999. A year earlier, a federal district court in the Virgin Islands concluded that a juvenile is not a defendant who serves a sentence for a federal crime within the meaning of 18 U.S.C. § 3585 and that the Bureau of Prisons lacked statutory authority to apply 18 U.S.C. § 3585 to juveniles. *See United States v. D.H.*, 12 F.Supp.2d 472, 474 (D.Vi.1998). Thereafter, the Bureau of Prisons revised its policy to comply with *United States v. D.H.* and now refuses to credit juveniles with pre-sentence time served. *See* Bureau of Prisons, Operations Memorandum No. 055–99 (5880), at 1 (Oct. 25, 1999). The most recent version of the Operations Memorandum, provides in relevant part.

3. **GENERAL INFORMATION.** Currently, Bureau of Prisons' policy allows for jail time credit to be applied to a JJDPA [Juvenile Justice and Delinquency Prevention Act of 1974] adjudication in the same manner as an adult sentence unless a juvenile is ordered committed to the 21st birthday.

In light of the court opinion, *U.S. v. D.H.*, 12 F.Supp.2d 472 (D.Vi.1998), and other factors, the Bureau will no longer apply prior custody credit to Old Law or New Law adjudications imposed under JJDPA.

. . . . .

4. **PROCEDURES.** Calculate Old Law JJDPA adjudications according to the Old Law policy, eliminating presentence time credit. Calculate New Law JJDPA terms according to the statutory provisions set forth in 18 U.S.C. §§ 5031–5042. Prior custody credit will not be applied to New Law JJDPA adjudications imposed on or after October 25, 1999.

*See* Bureau of Prisons, Operations Memorandum No. 003–2005 (5880), at 1 (April 25, 2005).

■ D.P.S. contends that *United States v. D.H.*, 12 F.Supp.2d 472, 474 (D.Vi.1998) and the current policy of the Bureau of Prisons conflicts with established United States Supreme Court and Eighth Circuit precedent which limits a court in sentencing a juvenile offender to a sentence that is no greater than the punishment prescribed for an adult, and cites to *United States v. R.L.C.*, 503 U.S. 291, 306, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) and *United States v. K.R.A.*, 337 F.3d 970, 974 (8th Cir.2003). In addition, D.P.S. relies primarily on the recent Ninth Circuit case of *Jonah R. v. Carmona*, 446 F.3d 1000, 1002 (9th Cir. 2006) and a recent decision of Judge Kornmann in *J.P.C. (JUV) v. United States*, 430 F.Supp.2d 961 (D.S.D.2006), both of which determined that juveniles are entitled to credit for time served as set forth in 18 U.S.C. § 3585.

The Government contends that (1) D.P.S.'s sentence has been properly calculated in accordance with federal law; (2) 18 U.S.C. § 3585(b) does not apply to juvenile adjudications as the plain language of the section applies to a "term of imprisonment;" (3) the rule of lenity does not apply in this case because the meaning of the statute is clear; (4) the objectives of the FJDA/JJDPA have been complied with; and (5) the Ninth Circuit case of *Jonah R. v. Carmona* is not controlling law in the District of North Dakota.

In *Jonah R. v. Carmona*, 446 F.3d 1000, 1002 (9th Cir.2006), the Ninth Circuit addressed the precise issue raised by D.P.S., i.e., whether Congress intended 18 U.S.C. § 3585 to apply to juveniles. The Ninth Circuit engaged in a lengthy discussion of the history of 18 U.S.C. § 3585 and of the Federal Juvenile Delinquency Act and subsequent revisions to each. *Id.* at 1003–1005. The Ninth Circuit noted that it would ordinarily give substantial deference to the Bureau of Prisons' interpretation of

18 U.S.C. § 3585 and the Federal Juvenile Delinquency Act, but in light of the Bureau of Prisons recent change in its interpretation, the Ninth Circuit held that the Bureau of Prisons interpretation was not entitled to any deference. *Id.* at 1006. The Ninth Circuit also noted that the Bureau of Prisons' change in course was admittedly influenced by a judicial decision and not because of the Bureau of Prisons' expertise.

The Ninth Circuit first looked to the plain meaning of 18 U.S.C. § 3585 and held that "the terms of § 3585 do not unambiguously preclude its application to juveniles." 446 F.3d 1000, 1007. The Ninth Circuit then turned to other canons of statutory construction to resolve the issue. By referencing related statutes, the Ninth Circuit found that 18 U.S.C. § 4105, governing the calculation of sentences for prisoners transferred to the United States, provides that a juvenile arrested outside the United States would receive credit for pre-sentence custody served abroad when he or she is transferred to an American detention facility. The Ninth Circuit reasoned that it would strain "credulity, however, to think that Congress would intend to deal more harshly with juveniles unlucky enough to be arrested in the United States." 446 F.3d 1000, 1008. In reviewing the legislative history surrounding 18 U.S.C. § 3585, the Ninth Circuit held that Congressional silence in the face of the generally-accepted practice of allowing juveniles credit for time served is "evidence that Congress wanted to leave the existing understanding in place." *Id.* The Ninth Circuit squarely rejected the Government's assertions that the 1986 amendment to 18 U.S.C. § 5037, dealing with good time credit, evidences Congress' intent to exclude juveniles from credit for time served. The Ninth Circuit opined that "[f]ar from an instruction from Congress to courts not to venture any further than the FJDA's term expressly provide,

the 1986 amendment reflects Congress's desire to make sure that existing sentencing practices maintaining parity between the treatment of adults and juveniles continue." *Id.* at 1010.

Finally, the Ninth Circuit noted that the FJDA's emphasis on rehabilitation and leniency made it "highly unlikely that Congress meant to treat juveniles more harshly than adult offenders." *Id.* Referencing the treatment of juvenile offenders in the District of Columbia, the Ninth Circuit illustrated the arbitrariness of the Bureau of Prisons' policy.

D.C. Code § 24-431(a), which is based on § 3585, provides that "[e]very person shall be given credit ... for time spent in custody ... as a result of the offense for which the sentence was imposed." The BOP, which computes sentences for D.C. inmates in addition to its federal duties, applies this "jail time credit" against juveniles' sentences just as it does for adults. *See* Bureau of Prisons, *D.C. Sentence Computation Manual*, Program Statement No. 5880.32, at XIV-6 (Jan. 23, 2001). Admittedly, the District's equivalent to the FJDA does not use a different vocabulary to discuss sentencing opinions for "youth offenders." *See* D.C. Code § 24-803(2). This difference in terminology cannot justify a difference in treatment. If a 15 year-old spends 100 days in pre-sentence custody in a city jail, the BOP gives him credit. If his 100 days are served across the street for a federal violation, the BOP does not, despite the fact that the individual's rehabilitative needs and society's interest in punishment do not differ in the two cases.

446 F.3d 1000, 1011.

The Ninth Circuit concluded that it could "think of no sensible reason why Jonah's liberty, which he lost for almost three years before his culpability was adju-

dicated, is worth less than a similarly-situated adult's" and held that "when Congress revised § 3585 and the FJDA in 1984, it intended for the BOP to continue to credit juveniles with time spent in presentence custody." *Id.*

The day before the decision was issued in *Jonah R. v. Carmona,* Judge Kornmann reached the same conclusion, albeit via a slightly different path, in *J.P.C. (JUV) v. United States,* 430 F.Supp.2d 961 (D.S.D. 2006). *J.P.C.* involved a juvenile whose probation was revoked. At the time of the dispositional hearing, Judge Kornmann assumed that J.P.C. would receive credit for time served in custody (approximately two months) while awaiting his revocation dispositional hearing. J.P.C. was subsequently advised that he would not receive credit for the time he spent in federal custody awaiting his revocation dispositional hearing. J.P.C. then filed a petition pursuant to 28 U.S.C. § 2255.[5]

Judge Kornmann determined that *United States v. D.H.,* 12 F.Supp.2d 472 (D.Vi. 1998) was not on point because it did not address a probation revocation case, and it was entitled to no consideration. Just as the Ninth Circuit held, Judge Kornmann determined the Bureau of Prisons' interpretation of 18 U.S.C. § 3585 should be given no deference because the policy change was clearly based on the Virgin Island case, and it was clear that the Bureau of Prisons adopted the policy change without examining statutes, conducting hearings, asking for comments, interpreting statutes, or independently setting policy. Judge Kornmann further opined:

Federal judges, probation officers, public defenders, and even U.S. attorneys were not advised as to the BOP change in policy which apparently took effect on October 25, 1999. Not until soon after December 20, 2005, did BOP communicate anything to the federal judiciary. The letter from BOP Director Lappin with a date of December 20, 2005, is an exhibit in this case. So also is the memorandum from Leonidas Ralph Mecham dated January 3, 2006. It was shortly after the Mecham memorandum that I became aware of the BOP reversal of previous policy. As the memorandum states: "Unfortunately, BOP made these decisions without advance notice and without soliciting the views of the Judicial Conference, its Criminal Law Committee, the Administrative Office's Office of Probation and Pretrial Services, or chief probation and pretrial services officers." I add the statement that no one was timely advised after the change in policy as well. Any judge dealing with juveniles in the federal courts would want that information, of course. It would be ludicrous to think that judges would routinely be reading district court decisions from another district. Nor is there any evidence that Congress had any information about the BOP reversal in policy. I doubt that any Senator, Member of Congress, or congressional staffer would be reading district court decisions. I reject all government arguments that Congress acted or failed to act with knowledge as to these questions involving juveniles. I also take judicial notice that very few federal judges deal

---

**5.** The Government claimed that J.P.C.'s petition should have been filed pursuant to 28 U.S.C. § 2241 because at the time the petition was filed J.P.C. was in custody in North Dakota. However, J.P.C. was subsequently returned to South Dakota for an evidentiary hearing. Judge Kornman found that, after the transfer of J.P.C. to South Dakota, the

District of South Dakota had jurisdiction over J.P.C. regardless of whether the petition was filed pursuant to 28 U.S.C. § 2241 or 28 U.S.C. § 2255. In addition, if J.P.C.'s petition were granted, he was nearing the release date and the matter needed to be decided expeditiously.

with juvenile defendants, especially on a routine basis. In South Dakota, we do deal with these defendants on a regular basis.

*Id.* Judge Kornmann ultimately concluded that "[r]egardless what sentence was imposed, BOP cannot insist on a longer sentence for juveniles by giving credit to adults for time served while denying the credit to similarly situated juveniles. BOP has violated what would a logical extension of the teaching of *United States v. R.L.C.,* 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992)." As a result, the Bureau of Prisons was ordered to calculate the credit to which J.P.C. was entitled for time spent in official detention awaiting his probation dispositional hearing.

The issue of whether 18 U.S.C. § 3585 applies to juvenile offenders has not been addressed by the Eighth Circuit. However, the Eighth Circuit has addressed the relationship between the maximum terms of imprisonment for juveniles and adult offenders. *See United States v. K.R.A.,* 337 F.3d 970 (8th Cir.2003). 18 U.S.C. § 5037(c) provides in relevant part:

The term for which official detention may be ordered for a juvenile found to be a juvenile delinquent may not extend ... beyond ... the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.

18 U.S.C. § 5037(c). The Eighth Circuit has held that the phrase "the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult" means the maximum length of sentence to which a similarly situated adult would be subject if convicted of the adult counterpart of the offense and sentenced under the statute requiring application of the Guidelines, 18 U.S.C. § 3353(b). *See United States v. K.R.A.,* 337 F.3d 970, 974 (8th Cir.2003) (citing *United States v. R.L.C.,* 503 U.S.

291, 306, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992)) (holding that the Senate Report accompanying the 1986 Technical Amendments Act states that the amendment "makes clear that juvenile sentences are to be of equal length as those for adult offenders committing the same crime."). While the Eighth Circuit has not specifically addressed the issue of the application of 18 U.S.C. § 3585 to juvenile offenders, it has clearly followed the United State Supreme Court's pronouncement in *United States v. R.L.C.,* 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) that juveniles are not to be treated more harshly than adult offenders in computing the length of their sentences.

The Court finds the Ninth Circuit's decision in *Jonah R. v. Carmona,* 446 F.3d 1000, 1002 (9th Cir.2006) and Judge Kornmann's decision in *J.P.C. (JUV) v. United States,* 430 F.Supp.2d 961 (D.S.D.2006) to be persuasive and logical extensions of the doctrines set forth by the Eighth Circuit in *United States v. K.R.A.,* 337 F.3d 970, 974 (8th Cir.2003) and the United States Supreme Court in *United States v. R.L.C.,* 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992).

The Government's argument that 18 U.S.C. § 3585 does not apply to juveniles is an untenable and unreasonable interpretation of that statute and contrary to Congressional intent. As the Ninth Circuit noted, the lack of an amendment to 18 U.S.C. § 3585 at the time Congress amended 18 U.S.C. § 3624 (good time credit) is clearly explained by the simple fact that at the time of the amendments, the Bureau of Prisons had interpreted 18 U.S.C. § 3585 to apply to juveniles and *was* giving juveniles credit for time served. *See Jonah R. v. Carmona,* 446 F.3d 1000, 1010 (9th Cir.2006). Further, adopting the Government's interpretation of 18 U.S.C. § 3585 contradicts the Federal Juvenile

Delinquency Act's purpose of encouraging treatment and the rehabilitation of juveniles and controlling precedent which dictates that juveniles should not be treated more harshly than adults. *See United States v. R.L.C.*, 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992); *United States v. K.R.A.*, 337 F.3d 970, 974 (8th Cir.2003).

After carefully reviewing the entire record, the Court finds that 18 U.S.C. § 3585 applies to juvenile offenders and that there is no basis in either law or policy, nor any legitimate reason, to treat a juvenile any different than an adult with respect to receiving credit for time served while awaiting sentencing or disposition. At the present time, the Bureau of Prisons treats juvenile inmates sentenced in the Ninth Circuit differently and has directed its staff to grant predisposition credit to juveniles. *See* United States' Revised Response to Petitioner's Motions to Correct Sentence, p. 13 (Docket No. 9–1). This change in policy applies to all juveniles sentenced within the Ninth Circuit regardless of where they are currently housed. *Id.* This change in policy also applies to all juvenile inmates currently housed within the Ninth Circuit regardless of where they were originally sentenced. *Id.* However, for inmates sentenced and residing outside the Ninth Circuit, the Bureau of Prisons has directed its staff to continue to follow Bureau of Prisons policy and not award prior custody credit to juveniles. *Id.* The Court would strongly urge the Bureau of Prisons to implement a more fair, reasonable, consistent, and common-sense policy and approach to this troublesome issue. There is a need for a different policy and approach on a nationwide basis rather than continued adherence to an inherently unreasonable and unfair policy which effectively treats juveniles far more harshly than adults.

In North Dakota and South Dakota, the federal district court judges routinely deal with juvenile defendants on a regular basis. I fully agree with my able colleague in South Dakota, Judge Kornmann, a very experienced federal district court judge, who reached the same conclusion and who similarly found that to deny juveniles credit for time served would be an injustice. The law weighs in favor of a policy which treats juvenile offenders the same as adult offenders.

## III. *CONCLUSION*

The Court **GRANTS** D.P.S.'s Motion for Habeas Corpus relief under 28 U.S.C. § 2241. (Docket Nos. 3 & 4). The Bureau of Prisons is directed to recalculate D.P.S.'s sentence and to apply any and all credit for time served which he would be due if sentenced as an adult.

**IT IS SO ORDERED.**