**UNITED STATES of America**

**v.**

**Paul Anthony HAMILTON.**

**No. 1–65 Cr.**

United States District Court
E. D. North Carolina,
Raleigh Division.

June 17, 1969.

Robert H. Cowen, U. S. Atty., John R. Hooten, Asst. U. S. Atty., Raleigh, N. C., for plaintiff.

Frank W. Bullock, Jr., Raleigh, N. C., for defendant.

### ORDER

BUTLER, Chief Judge.

This is a motion by Paul Anthony Hamilton under Rule 35, Federal Rules Criminal Procedure, to correct a sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b), by allowing a credit of 42 days [1] spent in custody prior to imposition of sentence.

In 1960 Congress amended 18 U.S.C. A. § 3568 by adding a provision requiring the Attorney General to give every federal prisoner automatic credit toward service of his sentence for any days spent in custody prior to the imposition of sentence for want of bail set for the offense under which sentence was imposed *where the statute requires the imposition of a minimum mandatory sentence.*

---

1. The record discloses that petitioner was in custody prior to sentence from December 4, 1964, to January 11, 1965, a total of 39 days.

Prior to the enactment of the 1960 amendment of § 3568 it was the general practice of federal courts to give defendants credit against their sentence for time spent in presentence custody for want of bail in all cases except where the statute required the imposition of a minimum sentence. In the absence of statutory authority judges generally felt they were without power to give such credit to defendants where the statute prescribed a mandatory minimum term of imprisonment. In Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326 (1966) the court said:

> "This situation, in the view of Congress, created an unwarranted disparity in the effective sentences of defendants convicted of minimum term offenses, in terms of total time in detention, between those who made bail and those who did not. To remove this disparity Congress amended § 3568 to provide an automatic credit for minimum term offenses. * * *
>
> "Congress made no provision in this amendment for defendants sentenced for offenses not carrying minimum terms of imprisonment * * * because it assumed that a credit for presentence custody for want of bail would continue to be provided by sentencing courts as a matter of course."

However, after the 1960 amendment of § 3568, cases arose in which defendants were sentenced to the maximum term authorized by statute for offenses not carrying minimum terms of imprisonment without an allowance of credit for presentence custody as Congress had assumed.

Stapf presented such a case. The District of Columbia Circuit said:

> "This disparity in treatment constitutes an irrational and arbitrary classification. * * * We perceive no rational basis for a classification whereby credit for presentence custody for lack of bail is required as to minimum term offenses but is deniable as to other, less serious offenses. * * *

> (T)he Fifth Amendment, which prohibits arbitrary classifications, prohibits effectuation of a discrimination against lesser offenses by judicial action. * * * Denial of credit in the context of a jurisprudence where others guilty of crimes of the same or greater magnitude automatically receive credit, would entail an arbitrary discrimination within the power and hence the duty of the court to avoid."

In a similar case, Judge Sobeloff, speaking for the court in Dunn v. United States, 376 F.2d 191 (4 Cir. 1967), said:

> "Under our holding a defendant must be credited for presentence custody no matter what the range of the penalty ultimately imposed, and regardless of whether a mandatory minimum attaches to the offense of which he stands convicted. Any denial of credit because the statute does not impose a mandatory minimum works an unconstitutional discrimination against him. * * * "

In 1966 Congress amended § 3568 to eliminate the arbitrary discrimination condemned by the courts. The amendment requires the Attorney General to give credit for *all* presentence custody, and not merely custody for want of bail. Since the effective date [2] of the 1966 amendment all federal prisoners receive automatic administrative credit for "any days spent in custody in connection with the offense or acts for which sentence was imposed," except for certain offenses triable in military tribunals. Since all defendants are now granted credit administratively, it is no longer the duty of the sentencing court to provide credit for presentence custody in any case. Indeed it is the better practice not to do so to avoid the possibility that double credit might be allowed.

It should be noted in the foregoing cases that prior to the 1966 amendment, in the absence of express statutory authority, courts generally allowed credit to all defendants consistent with the requirements of the Fifth Amendment.

---

**2.** September 20, 1966.

The question here is whether a defendant sentenced under the Federal Youth Corrections Act is entitled to credit toward service of his sentence for any days spent in custody in connection with the offense for which sentence was imposed.

On January 12, 1965, petitioner was convicted upon his plea of guilty of Interstate Transportation of a Stolen Motor Vehicle in violation of 18 U.S.C.A. § 2312, and was sentenced under the Federal Youth Corrections Act, 18 U.S.C.A. § 5010(b).

Section 5010(b) of the Act provides that "the court may, *in lieu of the penalty of imprisonment* otherwise provided by law, sentence the youth offender to the custody of the Attorney General for *treatment and supervision* pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter * * *." (Emphasis added.)

Section 3568 provides administrative credit for presentence custody in all cases of a "sentence of imprisonment."

In Viggiano v. United States, 274 F. Supp. 985 (S.D.N.Y.1967) the court said:

"In view of the purposes of the Youth Corrections Act and the benefits available to a defendant committed thereunder, it is both appropriate and rational to distinguish youth offenders from defendants not granted such treatment. Accordingly, defendant's reliance on the *Stapf* and *Dunn* cases, neither of which involved sentences under the Youth Corrections Act, is misplaced.

"Under that statute, defendant's sentence was not one of imprisonment for a fixed term; it was for corrective treatment as defined therein in lieu of the penalty of imprisonment otherwise provided by law. The Youth Corrections Act was enacted to provide corrective training and treatment of youth offenders as a substitute for a 'sentence of imprisonment,' referred to in section 3568 and in the general provisions for imprisonment under other applicable laws. Departing from the 'mere punitive idea of dealing with criminals', the Youth Corrections Act 'looks primarily to the objective idea of rehabilitation.' The treatment was designed to correct the antisocial tendencies of the youth offenders. Given the underlying purpose of the commitment, the period of confinement prior to sentence is of no significance on the issue to be decided by the Youth Corrections Division as to whether a youth offender has responded to corrective treatment and consequently is fit to be returned to society and to be released conditionally or unconditionally, as provided for by section 5017(c)." (Citations omitted.)

We do not agree that the underlying purposes of the Youth Corrections Act, or its terminology, can deprive a youth offender of his constitutional right to credit for presentence custody, whether statutorily authorized or not. If youth offenders are to be denied administrative credit for presentence custody under § 3568 because they are sentenced for treatment and supervision in lieu of the penalty of imprisonment, serious constitutional implications arise. If the statute does not provide credit, the courts must.

The modern penal concept is to rehabilitate criminals and to return them to society as useful citizens. Wherever this goal is accomplished it is done through treatment and supervision, education and training. The purpose of the Federal Youth Corrections Act has been said to be "the eventual rehabilitation of youthful offenders [and] is in line with the modern trend in penology which accents rehabilitation rather than punishment." Brisco v. United States, 246 F.Supp. 818 (D.C.Del.1965). See, also, Smearman v. United States, 279 F.Supp. 134 (D.C.Pa.1960). Therefore, there appears to be no material distinction in the ultimate social purpose for which a convicted criminal serves a sentence under the Federal Youth Corrections Act and under general criminal statutes. The purposes and consequences of the sentences are essentially the same. We find

no merit in the contention that a sentence of "imprisonment" and a sentence for "treatment and supervision" affords any justification for allowing credit for presentence custody in the first instance and denying it in the second. "So wide a gulf between the * * * treatment of the adult and of the child requires a bridge sturdier than mere verbiage, and reasons more persuasive than cliché can provide." In the matter of Gault, 387 U. S. 1, 29–30, 87 S.Ct. 1428, 1445, 18 L.Ed. 2d 527 (1967).

Young offenders subject to the Federal Youth Corrections Act include persons variously defined by the several states as "juveniles", whose constitutional rights were given consideration by the Supreme Court in *Gault,* supra. In discussing the vagaries of the logic employed by courts in juvenile proceedings as justification for the disregard of the juvenile's constitutional rights, and in committing juveniles to be "treated" and "rehabilitated", the Court said:

"The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours * * *.' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide." (27, 87 S.Ct. 1443)

In *Gault* the Court further said, "Neither the Fourteenth Amendment nor the Bill of Rights is for adults only." (13, 87 S.Ct. 1436)

■ A commitment to a federal institution under the Youth Corrections Act for treatment and supervision is nothing less than a sentence of imprisonment regardless of semantics.

■ We hold that to deny one committed under the Federal Youth Corrections Act credit for presentence custody and to allow such credit to all other federal prisoners is to deny the youth offender the equal protection of the law under the Fourteenth Amendment. Now, therefore,

It is ordered that petitioner's motion is hereby granted and he is allowed credit for the 39 days spent in custody prior to imposition of sentence under the Federal Youth Corrections Act.

It is further ordered that the Attorney General of the United States give petitioner credit on his indeterminate sentence imposed on January 12, 1965, under the Federal Youth Corrections Act, with 39 days presentence custody as it relates to his conditional and to his mandatory release under the Act.

It is further ordered that the Clerk of this court serve forthwith a copy of this Order by mail upon the United States Attorney, Raleigh, North Carolina, the petitioner, Paul Anthony Hamilton, and by registered or certified mail upon the Attorney General of the United States, Washington, D. C.