UNITED STATES of America,

v.

Donald THOMAS, Defendant.

No. 69 Civ. 1796.

United States District Court
S. D. New York.

June 27, 1969.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for the United States; Jack Kaplan, Asst. U. S. Atty., of counsel.

Henry A. Freedman, Center on Social Welfare Policy and Law, New York City, for defendant.

## OPINION

FRANKEL, District Judge.

Donald Thomas was found guilty on December 16, 1965, of interstate trans-

portation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. The maximum sentence under that statute is five years' imprisonment, a term which is not frequently imposed and would probably not have been imposed in this case despite defendant's discouraging record of prior difficulties. In the unlikely event the maximum sentence had been decreed, defendant would in the normal course have been released after serving about 3½ years,[1] and he would have been entitled to credit for 61 days of pre-sentence confinement because of his inability to make bail. Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326 (1966); Sobell v. United States, 407 F.2d 180 (2d Cir.1969).

However, in sentencing the defendant, the court determined that he should have what was deemed the benefit of treatment as a young adult offender under the Youth Corrections Act, 18 U.S.C. § 5005 et seq., as made applicable to this 22-year-old defendant by 18 U.S.C. § 4209. Under those provisions the defendant was, "in lieu of the penalty of imprisonment otherwise provided by law, sentence[d] * * * to the custody of the Attorney General for treatment and supervision * * * until discharged by the [Youth Correction] Division [of the Board of Parole] as provided in section 5017(c) * * *." 18 U.S.C. § 5010(b). This presented for him the following possibilities:

(1) Conditional release under supervision "at any time" under 18 U.S.C. § 5017(a).

(2) Unconditional discharge by the Division's decision "at the expira-

tion of one year from the date of conditional release." 18 U.S.C. § 5017(b).

(3) Instead of either or both of the foregoing relatively cheerful possibilities, a mandatory *conditional* release after four years of confinement, subject to recommitment thereafter on the Division's order for a further period which could extend until "six years from the date of * * * conviction." 18 U.S.C. §§ 5017(c) and 5020.

Whatever any of us may have hoped or intended, the defendant in this case has not flourished under the beneficent auspices of the Youth Corrections Act. Unresponsive to programs for his rehabilitation, he has spent much of his time in institutions, and under regimens, substantially like those of ordinary adult federal prisoners. He is at this time in such a situation. He makes the astute prediction that he is unlikely to receive his conditional release before the end of the four-year period after which that becomes his absolute right. In what the court has treated, without procedural dispute, as a motion under 28 U.S.C. § 2255, he asks that the four-year maximum (or, if it should come to that, the later six-year maximum) be reduced by the 61 days he spent in confinement before he was sentenced. He points out, again without dispute, that those days in jail were suffered because he could not post the bail set as a condition of release. And he urges that the two months of freedom he seeks are rightfully his under 18 U.S.C. § 3568 (1964), as construed in Sobell v. United States, *supra.*[2]

---

1. See 18 U.S.C. §§ 4161 (time credited for good conduct) and 4162 ("industrial good time").

2. "The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: *Provided*, That the Attorney General shall give any such person credit toward service of his sentence for any days spent in

custody prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which sentence was imposed where the statute requires the imposition of a minimum mandatory sentence.

"If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

The government, while by no means wholly unsympathetic, urges that the provision for credit under 18 U.S.C. § 3568, as illuminated by *Sobell*, is inapplicable because Thomas was locked up "for treatment and supervision," and not subjected to "imprisonment" under § 3568. Therefore, it is said, whatever he might prefer, the Attorney General is obliged, by what Congress wrote and did not write, to oppose this motion. The argument is unpersuasive textually and penologically.

Starting with the pertinent statutory words, we note that Congress provided that the kind of sentence Thomas is serving should be imposed "in lieu of the penalty of imprisonment otherwise provided by law * * *." 18 U.S.C. § 5010(b). Even as a semantic exercise, the government's thesis that this is "'treatment and supervision' * * * as distinguished from 'imprisonment'" has little to recommend it. As Chief Judge Sobeloff observed in Pilkington v. United States, 315 F.2d 204, 208 (4th Cir.1963), "the euphemism * * * does not alter the arithmetic * * *." Like the arithmetic, the months and years passed in "the custody of the Attorney General," 18 U.S.C. § 5010(b), are not altered for purposes meaningful here because the judgment from which they flow was meant specially to help the prisoner.[3]

It is not essential to this conclusion, though it is a fact, that young Thomas has served much of his sentence under the same conditions as those of prisoners not committed for the "treatment" accorded "youth" or "young adult" offenders. It is enough that Congress, when it gave a "credit" to prevent the arbitrary lengthening of maximum sentences for people who could not make bail, said nothing to suggest that confinement meant for the prisoner's benefit should not be subject to this rule of primitive fairness. There is not a word in the pertinent statutes to justify the thought that the young person held before sentence without bail was intended to have his "treatment" enhanced by that period of custody over and above the four- or six-year maximum otherwise authorized.

Thomas is different from other prisoners, the United States Attorney argues, because "the eligibility for prompt parole and the opportunity to have his conviction set aside [under 18 U.S.C. § 5021] are substantial benefits that Thomas has, but which the regular prisoners in the penitentiary do not have * * *."[4] By his motion now, the argument continues, this defendant seeks "the benefits of the Youth Corrections Act without any of its detriments."[5] One obvious trouble with the argument is that Thomas has in fact had no "benefits," only "detriments." If his neglected "opportunity" was a benefit in some sense, it was not one he sought. More importantly, the "benefits" he neglected to realize are not a relevant concern of any kind under the pertinent statutes. Congress did not distinguish among the kinds of post-sentence "custody"—in terms of "benefits" or "detriments" or otherwise—against which presentence "custody" should be credited. There is no reason why we should strain to detect or create a distinction of such arid refinement. On the contrary, we avoid constitutional problems of substan-

"No sentence shall prescribe any other method of computing the term."
Having been sentenced on January 14, 1966, Thomas does not rely upon the amendatory provision of the Bail Reform Act, Pub.L. No. 89–465, 80 Stat. 214, effective September 20, 1966, which gives credit for *all time* spent in jail, whether or not the prisoner is under a mandatory minimum sentence. It bears mention, however, that our Circuit in *Sobell* (407 F.2d at 182–183) found the "policy"

of this amendment pertinent to the cognate claim there sustained.

3. Still on semantics, it is interesting that 18 U.S.C. § 3568 gives credit for "days spent in custody * * *." And it is, literally, "custody" which concerns us, both before this defendant's sentence and after.

4. Reply Affidavit opposing motion, ¶7.

5. *Id.*

tial proportions by following the literal and sensible meaning of what Congress wrote. Cf. Sobell v. United States, 407 F.2d at 182; Stapf v. United States, 367 F.2d at 329–330.

The fact is, of course, that the question before the court will arise only for defendants seeking an equality of detriments, not for those demanding cut-rate benefits. The narrow issue is not posed unless the defendant approaches the maximum, or something very close to the maximum, of either four or six years. Cf. Putt v. United States, 392 F.2d 64 (5th Cir.), cert. denied, 393 U.S. 929, 89 S.Ct. 264, 21 L.Ed.2d 266 (1968). And such a defendant, at least in all but the rarest of cases, will be one for whom the hopes underlying the Youth Corrections Act have been misplaced. The overwhelming likelihood is that youths who respond positively to the rehabilitation efforts under the statutory scheme in question will win both conditional and unconditional release—and erasure of the conviction record, 18 U.S.C. § 5021(a)—long before the maximum period of authorized confinement. This estimate is not based upon overall statistics, which have not been found, but upon the experience of several years in a busy court, including not only the cases of direct concern to this writer, but the reports, reflecting wider and steadier exposures, of our colleagues in the Probation Office. The observation happens, incidentally, to fit the present defendant, who, as the United States Attorney says, "had not responded favorably to the treatment" afforded him under the Youth Corrections Act.

It is not realistic, in short, or at least very rarely realistic, to worry, as the United States Attorney does, about thwarting the Congressional design by shortening the four or six years of "treatment" allowable as outside limits under the Youth Corrections Act. It is perhaps an ample answer to say that a show of governmental decency, equalizing the terms of those who could not make bail before sentence, may help in itself to promote receptivity to treatment efforts. Beyond that, there is no evidence that Congress purported to measure in millimeters the unmeasurable length of time "needed" for treatment. And, finally, the Department of Justice itself has exhibited its awareness that the simple rule of fairness defendant seeks is far more urgent than an iron insistence that the full maximum limits of the Corrections Act be protected against any minute decrease. In its fair and candid papers resisting the present motion, the Department points out that its own legislative program includes a projected amendment to provide explicitly for the kind of credit Thomas seeks. In the end, then, the modest point of this opinion is the conclusion that there is no need for further legislation to compel a result which is commanded by simple decency and thoroughly consistent with the words already in the statute books.

The motion is granted. Defendant will be credited with the 61 days he spent in custody before he was sentenced. It is so ordered.[6]

The court is pleased to acknowledge the generous assistance of Messrs. Henry A. Freedman, Lee A. Albert and Robert P. Borsody, of the Columbia Center on Social Welfare Policy and Law, who accepted assignment as counsel and filed a valuable Memorandum of Law in support of the *pro se* motion.

6. This decision differs superficially from that of Judge Weinfeld in Viggiano v. United States, 274 F.Supp. 985 (S.D.N.Y. 1967). The seeming difference is probably not a real one, however, in light of our Circuit's intervening decision in Sobell v. United States, *supra.*