**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JONAH R.,

*Petitioner-Appellant,*

v.

GILBERT CARMONA,

*Respondent-Appellee.*

No. 05-16391

D.C. No.
CV-04-01519-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
January 11, 2006—San Francisco, California

Filed May 2, 2006

Before: John T. Noonan, William A. Fletcher, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Robert J. McWhirter, Federal Public Defender's Office, Phoenix, Arizona, for the petitioner-appellant.

Linda C. Boone, Thomas C. Simon, Office of the United States Attorney, Phoenix, Arizona, for the respondent-appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Petitioner Jonah R. spent almost 35 months in detention before he was sentenced to a 30-month term of confinement under the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5031 *et seq.* The Federal Bureau of Prisons ("BOP") calculates sentences for persons, including juveniles like Jonah, remanded to its custody. Pursuant to a recently-adopted policy, the BOP refused to subtract from Jonah's sentence any of the 35 months he spent in pre-sentence custody. The district court rejected Jonah's challenge to this policy. We hold that juveniles must receive credit for pre-sentence custody and accordingly reverse.

## I. Background

On June 17, 2001, Jonah was arrested after shooting at a law enforcement officer while on the Salt River Pima-Maricopa Indian Reservation. He was charged under 18 U.S.C. § 1153, "Offenses committed within Indian Country," with assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), and with discharge of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In October 2001, the district court transferred Jonah, who was 17 at the time of the incident, to adult status. We reversed in July 2003, holding that because the district court did not obtain Jonah's juvenile records as required under FJDA, 18 U.S.C. § 5032, it lacked jurisdiction to transfer him for prosecution as an adult. *United States v. Juvenile Male*, 336 F.3d 1107, 1110-11 (9th Cir. 2003). After spending nearly 35 months in custody, mostly while designated as an adult, Jonah was finally sentenced pursuant to the FJDA on June 7, 2004. He received 30 months of custody plus another 30 months of supervised release.

This appeal concerns the BOP's refusal to subtract any of the 35 months of Jonah's pre-sentence confinement from his

30-month sentence. 18 U.S.C. § 3585(b) provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . ." The FJDA does not expressly incorporate § 3585. However, before 1999 the BOP consistently applied § 3585 to juveniles when calculating their sentences under the FJDA. *See* Bureau of Prisons, *Sentence Computation Manual ("Old Law"-Pre CCCA-1984)*, Program Statement No. 5880.30, at XII-4 (July 16, 1993), *available at* http://www.bop.gov (declaring that "[p]resentence time shall be applied to a [juvenile's] sentence the same as for an adult . . . .").

The BOP reversed course in 1999. A year earlier, a U.S. Virgin Islands district court, noting that "the whole purpose of treating minors as juveniles [is] to take them out of the criminal process[,]" concluded that a juvenile is not a "defendant" who serves a "sentence" for a federal crime within the meaning of § 3585. *United States v. D.H.*, 12 F. Supp. 2d 472, 474 (D.V.I. 1998). The court held that the BOP lacked the statutory authority to apply § 3585 to juveniles. *Id.* at 475. The BOP revised its policy to accord with *D.H.* It now refuses to credit juveniles with pre-sentence time served. *See* Bureau of Prisons, Operations Memorandum No. 007-2003 (5880), at 1 (Feb. 19, 2003).

Jonah filed a habeas petition pursuant to 28 U.S.C. § 2241 to challenge the BOP's current policy. Rejecting a magistrate's report and recommendation, the district court decided to follow *D.H.* It reasoned that § 3585(b) applies only to "a defendant who has committed an offense and has received a sentence of imprisonment." According to the district court, juveniles commit "acts of juvenile delinquency," not offenses, and they "receive a term of official detention," not imprisonment. Hence § 3585(b) by its plain terms does not intersect with the FJDA, and the BOP "cannot grant juveniles credit for pretrial custody . . . ." This appeal followed.

## II.   Discussion

**[1]** We review de novo the denial of a habeas petition filed pursuant to 28 U.S.C. § 2241. *Taylor v. Sawyer*, 284 F.3d 1143, 1147 (9th Cir. 2002). Whether a juvenile whose status is adjudicated under the FJDA must receive credit against his or her sentence for time spent in pre-sentence custody is a question of first impression. We begin with a close look at the relevant statutes.

### A.   Statutory Background

The first statute governs the calculation of sentences for adult offenders. Congress first enacted what eventually became § 3585 in 1932. This statute, which was codified in part at 18 U.S.C. § 3568, provided that a convicted defendant's sentence "shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence . . . ." Act of June 29, 1932, Pub. L. No. 72-210, 47 Stat. 381, 381. Although the statute did not explicitly instruct the BOP to credit convicted defendants with time spent in pre-sentence custody, federal courts, as a "general practice," "provide[d] defendants credit against their sentence for time spent in jail for lack of bail." *Stapf v. United States*, 367 F.2d 326, 328 (D.C. Cir. 1966).

There was a judicially-created exception to this "general practice." For crimes that carried mandatory minimum sentences, courts believed that they lacked the statutory power to afford defendants pre-sentence credit. *Stapf*, 367 F.2d at 328. In 1960, Congress, both signaling its approval of the "general practice" and indicating an intention to make § 3568 more universally applicable, amended the statute to eliminate this exception. Section 3568 as amended provided that

> the Attorney General shall give any [person convicted of an offense in a court of the United States] credit toward service of his sentence for any days

> spent in custody prior to the imposition of sentence
> by the sentencing court for want of bail set for the
> offense under which sentence was imposed where
> the statute requires the imposition of a minimum
> mandatory sentence.

Act of Sept. 2, 1960, Pub. L. No. 86-691, 74 Stat. 738, 738.

As the D.C. Circuit noted, Congress did not expressly make the amended § 3568 applicable outside the mandatory minimum context "because it assumed that a credit for presentence custody for want of bail would continue to be provided by sentencing courts as a matter of course." *Stapf*, 367 F.2d at 328. However, some courts misunderstood the amendment and held that credit was required under § 3568 only for those defendants whose convictions carried mandatory minimum sentences. *See Sobell v. United States*, 407 F.2d 180, 181 (2d Cir. 1969); *Bryans v. Blackwell*, 387 F.2d 764, 766 (5th Cir. 1967). In part to correct this misunderstanding, Congress again amended § 3568 in 1966 to provide that "any person convicted of an offense" shall receive "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed[,]" regardless of whether the sentence involved a statutory minimum. Bail Reform Act of 1966, Pub. L. No. 89-465, § 4, 80 Stat. 214, 217. We observed shortly thereafter that, "[a]s amended, Section 3568 . . . require[s] that the Attorney General give credit in *all* cases of presentence custody." *Williams v. United States*, 440 F.2d 684, 685 (9th Cir. 1971) (emphasis added).

The final relevant change came eighteen years later when Congress passed the Sentencing Reform Act of 1984. The statute repealed § 3568, *see* Pub. L. No. 98-473, § 212, 98 Stat. 1987, 1987 (1984), and replaced it with 18 U.S.C. § 3585. *See id.* ch. 227, 98 Stat. 2001 (codified at 18 U.S.C. § 3585); *see also United States v. Wilson*, 503 U.S. 329, 334-

37 (1992) (discussing replacement of § 3568 with § 3585). Section 3585 provides, in relevant part:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences —
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . .

18 U.S.C. § 3585(b). Section 3585 substitutes "official detention" for "custody," and it enlarges the class of persons who receive pre-sentence credit, but is otherwise quite similar to § 3568. *See, e.g.*, *Wilson*, 503 U.S. at 334 (holding that "the Attorney General must continue to compute the credit under § 3585(b) as he did under the former § 3568").

The second statute governs the treatment of juveniles. The Federal Juvenile Delinquency Act ("FJDA") was first passed in 1938 to remedy "the unsatisfactory existing law" that required "juveniles to be treated and prosecuted in the same manner as adults." S. Rep. No. 75-1989, at 1 (1938). The statute furthers rehabilitative goals by "removing juveniles from the ordinary criminal justice system and by providing a separate system of 'treatment' for them." *United States v. Frasquillo-Zomosa*, 626 F.2d 99, 101 (9th Cir. 1980). As originally enacted, the FJDA provided, in pertinent part:

> In the event that the court finds [a] juvenile guilty of juvenile delinquency . . . it may commit the delinquent to the custody of the Attorney General for a period not exceeding his minority, but in no event exceeding the term for which the juvenile could have

been sentenced if he had been tried and convicted of the offense which he had committed.

Act of June 16, 1938, Pub. L. No. 75-666, 52 Stat. 764, 765.

Congress revised the FJDA in 1974 in the Juvenile Justice and Delinquency Prevention Act ("JJDPA"), Pub. L. No. 93-415, 88 Stat. 1109 (1974). The JJDPA amended the provision governing juvenile sentencing to state:

> [C]ommitment . . . shall not extend beyond the juvenile's twenty-first birthday or the maximum term which could have been imposed on an adult convicted of the same offense, whichever is sooner, unless the juvenile has attained his nineteenth birthday at the time of disposition, in which case . . . commitment . . . shall not exceed the lesser of two years or the maximum term which could have been imposed on an adult convicted of the same offense.

*Id.* § 507, 88 Stat. 1136 (codified as amended at 18 U.S.C. § 5037(b)). This provision was substantially revised in 1984, when Congress redrafted it to read as follows:

> The term for which official detention may be ordered for a juvenile found to be a juvenile delinquent may not extend —
>
>    (1)  in the case of a juvenile who is less than eighteen years old, beyond the lesser of —
>
>       (A)  the date when the juvenile becomes twenty-one years old; or
>
>       (B)  the maximum term of imprisonment that would be authorized by section 3581(b) if the juvenile had been tried and convicted as an adult; or

(2) in the case of a juvenile who is between eighteen and twenty-one years old —

(A) who if convicted as an adult would be convicted of a Class A, B, or C felony, beyond five years; or

(B) in any other case beyond the lesser of —

(i) three years; or

(ii) the maximum term of imprisonment that would be authorized by section 3581(b) if the juvenile had been tried and convicted as an adult.

Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 214, 98 Stat. 1987, 2013 (1984) (codified at 18 U.S.C. § 5037(c)).

Finally, the Youth Corrections Act ("YCA") was passed in 1950 "to make available for the discretionary use of the Federal judges a system for the sentencing and treatment of persons under the age of 22 years who have been convicted of crime . . . that will promote the rehabilitation of those who . . . show promise of becoming useful citizens . . . ." H.R. Rep. No. 81-2979 (1950), *reprinted in* 1950 U.S.C.C.S. 3983, 3983. The YCA shared the FJDA's emphasis on rehabilitation. *Compare Dorszynski v. United States*, 418 U.S. 424, 433 (1974) (observing that the YCA "focused primarily on correction and rehabilitation"), *with United States v. Juvenile*, 347 F.3d 778, 785 (9th Cir. 2003) (discussing the FJDA's rehabilitative purpose). If a court determined that a person under age 22 should be classified as a "youth offender," the YCA authorized the court, "in lieu of the penalty of imprisonment otherwise provided by law, [to] sentence the youth offender to the custody of the Attorney General for treatment and supervision . . . ." Act of Sept. 30, 1950, Pub. L. No. 81-865, § 5010, *reprinted in* 1950 U.S.C.C.S. 1079, 1080.[1] The Sentencing

---

[1]The FJDA and the YCA addressed different populations. The FJDA applies to individuals under age 18, while the YCA applied to individuals

Reform Act of 1984, which also revised the FJDA, repealed the YCA. *See* Pub. L. No. 98-473, § 218(a), 98 Stat. 1987, 2027 (1984).

## B.   Interpretation

**[2]** With this backdrop in mind, we must decide whether Congress intended § 3585 to apply to juveniles. As always, we begin with the statute's plain meaning. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000). If the statute's terms are ambiguous, we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent. *See Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1045 (9th Cir. 2005).

Ordinarily we would give substantial deference to the BOP's interpretation of § 3585 and the FJDA. *See Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001). We do not do so here for several reasons. First, the government did not argue for any such deference in its brief. Second, the BOP's current interpretation of the statutes at issue contradicts its previous interpretation. *See Norfolk So. Ry. Co. v. Shanklin*, 529 U.S. 344, 356 (2000) (affording no deference to an agency's interpretation when it "contradicts the agency's own previous construction"). Finally, by its own admission, the BOP changed its interpretation because of a judicial decision, not because its particular expertise led it to do so.

## 1.   Plain Meaning

The *D.H.* court held that the plain meaning of § 3585 renders it inapplicable to juveniles:

---

between the ages of 18 and 22. *See* William S. Sessions & Faye M. Bracey, *A Synopsis of the Federal Juvenile Delinquency Act*, 14 St. Mary's L.J. 509, 517 (1983).

> D.H. categorically is not a "defendant." D.H. is an adjudicated juvenile delinquent. While he is in official detention, he is not serving a "sentence" for a federal crime . . . .
>
> . . . . Section 3585 applies to "defendant" serving a sentence imposed for the "commission of an offense." "Offense" is not an act of "juvenile delinquency" . . . . D.H. was committed to official detention under section 5037 as a juvenile whom the Court found to have committed acts of juvenile delinquency. Since he is not in official detention under a sentence after being found guilty of a criminal offense, section 3585 does not apply and he is not entitled to presentence credit.

12 F. Supp. 2d at 474. The district court in Jonah's case agreed with *D.H.*, concluding that a juvenile is not a "defendant" "sentenced" for an "offense," and thus cannot fit within the terms of § 3585.

**[3]** "[P]lain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985). We disagree with the district courts in this case and in *D.H.* about the plain meaning of § 3585. Because "[a] successful prosecution under" the FJDA "results in a civil adjudication of status, not a criminal conviction[,]" *United States v. Doe*, 53 F.3d 1081, 1083 (9th Cir. 1995), a somewhat different vocabulary is sometimes used in the juvenile justice system. However, most of the terms that are so purportedly foreign to the FJDA — "defendant," "offense," and "sentence" — are frequently used in connection with juveniles. The FJDA distinguishes between "juvenile delinquency" and "crime" when it defines the terms, *see* 18 U.S.C. § 5031, but it also conflates the two. For example, the FJDA provides for federal jurisdiction over "a juvenile alleged to have committed an act of juvenile delinquency" if the Attorney General certifies that "the *offense* charged is a *crime* of

violence . . . ." 18 U.S.C. § 5032 (emphasis added). Another statute in Title 18 expressly defines "offender" as including a person "adjudged to have committed an act of juvenile delinquency." 18 U.S.C. § 4101(e).

**[4]** We also routinely refer to juveniles as "defendants" and to a juvenile's term of detention as a "sentence." *See, e.g.*, *United States v. Leon H.*, 365 F.3d 750, 752-53 (9th Cir. 2004); *Juvenile*, 347 F.3d at 787. In this very case the district court referred to Jonah's other acts of juvenile delinquency as " 'offense[s].' " *Juvenile Male*, 336 F.3d at 1109 (quoting the district court's decision regarding transfer to adult status). Even the BOP refers to juveniles with vocabulary that, according to the *D.H.* court, should be reserved for adult offenders. *See* Bureau of Prisons, *Juvenile Delinquents*, Program Statement No. 5216.05, at 1 (Sept. 1, 1999) (stating that juveniles are "sentenced" under the FJDA); *id.* at 2 (defining "juvenile" in part as someone under 18 who is "convicted" of a federal violation).

The district court's understanding of the plain meaning of § 3585 rests in large measure on our decision in *United States v. Doe*, 53 F.3d 1081 (9th Cir. 1995). In *Doe*, we addressed whether 18 U.S.C. § 3583(a), which authorizes a term of supervised release to follow "a term of imprisonment for a felony or a misdemeanor," applies to juveniles. Because juveniles receive civil adjudications of status, not convictions for felonies or misdemeanors, we held that § 3583(a) does not authorize supervised release for juveniles. *Id.* at 1083-84. *Doe* has limited instructive force. The distinction we had previously drawn between "misdemeanor" and "felony," on one hand, and "act of juvenile delinquency," on the other, rendered *Doe*'s terms more unsuitable for use in the juvenile context than those at issue here. *See United States v. Gonzalez-Cervantes*, 668 F.2d 1073, 1076 (9th Cir. 1981). Moreover, Congress's subsequent adoption of legislation authorizing supervised release for juveniles, *see* 21st Century Dep't of Justice Appropriations Authorization Act, Pub. L. No. 107-23,

116 Stat. 1758, 1896-97 (2002), cautions against a too-literal reading of Title 18 as applied to juveniles.

**[5]** Finally, we note that § 3568, the predecessor of § 3585, contained a single express exception: its pre-sentence custody credit did not apply to "offense[s] triable by court-martial, military commission, provost court, or other military tribunal[.]" *See* Bail Reform Act of 1966, Pub. L. No. 89-466, § 4, 80 Stat. 214, 217; *United States v. Allen*, 17 M.J. 126, 127 (C.M.A. 1984). When Congress replaced § 3568 with § 3585, it eliminated this express exception. The canon *expressio unius est exclusio alterius* supports the conclusion that Congress intended § 3568 to apply to all other categories of persons in federal custody, including juveniles, and that Congress knows how to craft an exception when it intends one. Section 3585's elimination of § 3568's only express exception suggests that the statute should have wider, not narrower, applicability.

**[6]** We therefore conclude that the terms of § 3585 do not unambiguously preclude its application to juveniles. We turn to other canons of construction to determine whether Congress intends juveniles to benefit from its terms.

## 2. Related Statute

**[7]** It is a "rudimentary principle[ ] of construction" that "statutes dealing with similar subjects should be interpreted harmoniously." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738-39 (1989) (Scalia, J., concurring). In 1977, Congress enacted a statute to regulate the transfer of prisoners in and out of the United States. Act of Oct. 28, 1977, Pub. L. No. 95-144, 91 Stat. 1215 (codified at 18 U.S.C. § 4100 *et seq.*). Part of the transfer statute concerns the calculation of sentences for prisoners transferred to the United States. *See* 18 U.S.C. § 4105.

**[8]** The transfer statute provides that "[t]he *transferred offender* shall be given credit toward service of the sentence

for any days, prior to the date of commencement of the sentence, spent in custody in connection with the offense or acts for which the sentence was imposed." 18 U.S.C. § 4105(b) (emphasis added). An "offender" is defined as "a person who has been convicted of an offense or who has been adjudged to have committed *an act of juvenile delinquency*." *Id.* § 4101(e) (emphasis added). Put differently, an American juvenile arrested elsewhere receives credit for pre-sentence custody served abroad when he or she is transferred to an American detention facility.

**[9]** The House Report on the transfer statute declares that its pre-sentence credit provision "parallels section 3568 of Title 18 . . . ." H.R. Rep. 95-720, at 34 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3146, 3157. In the past we have required that the transfer statute and the general pre-sentence custody provision of Title 18 be interpreted similarly in order to avoid inconsistent treatment of similar categories of prisoners. *Ajala v. U.S. Parole Comm'n*, 997 F.2d 651, 655 (9th Cir. 1993). The transfer statute points to the obvious conclusion that § 3585 should apply to the FJDA to ensure that juveniles arrested here receive the same treatment as juveniles arrested abroad.

The government asks us to take a different lesson from the transfer statute, arguing that it demonstrates that Congress speaks clearly and expressly when it wants juveniles to receive pre-sentence credit. It strains credulity, however, to think that Congress would intend to deal more harshly with juveniles unlucky enough to be arrested in the United States. Moreover, disparate treatment of the sort the government urges us to countenance might well trigger equal protection concerns. *Cf. Myers v. United States*, 446 F.2d 232, 234 (D.C. Cir. 1971) (holding that the Fifth Amendment requires that all similarly-situated prisoners receive credit under § 3568); *Stapf,* 367 F.2d at 329 ("Denial of credit . . . where others guilty of crimes of the same or greater magnitude automatically receive credit, would entail an arbitrary discrimination

within the power and hence the duty of the court to avoid."). We must interpret statutes to avoid such constitutional difficulties whenever possible. *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001).

### 3.   Legislative History

**[10]** To suggest that Congress intentionally singled out juveniles arrested abroad for special treatment ignores the general practice in place in 1977, when it enacted the transfer statute. At that time, both the BOP and federal courts understood that § 3568, the predecessor of § 3585, applied to juveniles. In 1984, when the pre-sentence custody and juvenile justice provisions of Title 18 underwent extensive revision, this general practice went unmentioned. This history strongly suggests that when Congress drafted the transfer statute, it expected that juveniles would receive credit for pre-sentence custody as a matter of course.

Starting in 1969, the BOP, as part of its implementation of the 1966 Bail Reform Act, announced that it would give juveniles credit against their sentences for time spent in presentence custody. *See Proceedings of Seminar for Newly Appointed United States District Judges*, 75 F.R.D. 89 (1976) (discussing BOP Policy Statement No. 7600.51 (Oct. 30, 1969)). This practice was followed in 1984. *See* Bureau of Prisons, *Sentence Computation Manual ("Old Law"-Pre CCCA-1984)*, Program Statement 5880.30, at VI-2 (June 30, 1997). And, according to its Sentencing Manual then in effect, courts agreed with the practice. *Id.* ("Case law confirmed the applicability of [§ 3568] to . . . the Federal Juvenile Delinquency Act . . . ."). Moreover, the practice was generally in harmony with Congress's consistent efforts to expand the applicability of § 3568 in the 1960s.

Analogously, most federal courts during that period required the BOP to give pre-sentence credit to youthful offenders sentenced under the now-defunct YCA, a statute

that shared the FJDA's goals and purposes. *See United States v. Hamilton*, 300 F. Supp. 728, 730 (E.D.N.C. 1969); *EK v. United States*, 308 F. Supp. 1155, 1156-57 (S.D.N.Y. 1969); *United States v. Thomas*, 300 F. Supp. 1201, 1203 (S.D.N.Y. 1969). Indeed, at least twice courts rejected a variant of the argument the government makes here — that, because § 3568 by its terms applied only to those subjected to "imprisonment," and because offenders received "treatment and supervision" under the YCA, § 3568 did not apply to their sentences. *Thomas*, 300 F. Supp. at 1203; *EK*, 308 F. Supp. at 1156-57. Although one court disagreed, *see Viggiano v. United States*, 274 F. Supp. 985, 986 (S.D.N.Y. 1967), the BOP ultimately adopted the position of the *Thomas* and *EK* courts as its own. *See United States v. Robinson*, 720 F.2d 203, 207 n.3 (D.C. Cir. 1983) (describing BOP's sentencing practices for the YCA).

The *D.H.* court insisted that the YCA "has been repealed, and there is no basis to extend interpretations of that act to" the FJDA. 12 F. Supp. 2d at 473 n.1. However, the BOP, interpreting the law in effect before 1984, lumped the two statutes together when it declared that juveniles were to get pre-sentence credit. BOP, *Sentence Computation Manual ("Old Law"-Pre CCCA-1984)*, at VI-2 (June 30, 1997). Also, the YCA, which shared the FJDA's rehabilitative goals, was repealed in part because, "contrary to the intent of Congress, the [YCA's] special sentencing provisions [had] often served to place youthful persons in a disadvantageous position" vis-à-vis adults. H.R. Conf. Rep. No. 98-1017, at 57 (1984); *see also Carter v. United States*, 306 F.2d 283, 285 (D.C. Cir. 1962) (justifying a longer sentence under the YCA because "rehabilitation [under the YCA] may be regarded as comprising the quid pro quo for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison"). It would be odd indeed to interpret the YCA's repeal as evidence that Congress wanted to treat adults more favorably than "youthful persons."

**[11]** There are other suggestions that Congress in 1984 intended juveniles to continue to receive credit for presentence custody. None of the Congressional reports on the 1984 Act give any indication whether § 3585 is supposed to apply to the FJDA. *See* H.R. Conf. Rep. No. 98-1017, at 54 (1984) (explaining repeal of § 3568); S. Rep. No. 98-225, at 129 (1984) (explaining enactment of § 3585); *id.* at 155 (explaining revision of FJDA § 5037). This legislative silence in the face of a generally-accepted practice is evidence that Congress wanted to leave the existing understanding in place. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1052 (9th Cir. 2001) (stating that "congressional silence is instructive" when Congress enacts a law after courts had developed a standard practice). Moreover, the Senate Report on the 1984 Act provides that § 5037(c), the provision under which Jonah was sentenced, "parallels the 1974 [JJDPA] provision set forth in current law for juveniles under 18 at the time of the proceeding." S. Rep. No. 98-225, at 155 (1984). According to the Senate Report on the JJDPA, the 1974 statute amended § 5037 "to provide that a juvenile is entitled to *all rights* that would be accorded an adult in a criminal prosecution . . . ." S. Rep. No. 93-1011, *reprinted in* 1974 U.S.C.C.A.N. 5283, 5321 (emphasis added).

The government nonetheless contends that subsequent legislative action, namely a 1986 amendment to § 5037 dealing with good time credit, confirms Congress's intent to put juveniles beyond the reach of § 3585. Under 18 U.S.C. § 3624(b), offenders may receive "good time" credit to shorten their sentences. The 1986 amendment revised § 5037 to read in part, "Section 3624 is applicable to an order placing a juvenile under detention." 18 U.S.C. § 5037(c) (amended 1986). If courts could incorporate provisions of the sections of Title 18 applicable to adults into the FJDA without explicit Congressional instruction, the government reasons, the 1986 amendment will have been superfluous; by its existence, Congress has signaled that courts should refuse to extend § 3585 or the FJDA unless Congress expressly tells them to do so.

**[12]** The government's attempt to distill Congress's intent from the 1986 amendment conflicts with the stated intentions of its sponsors. Senator Thurmond explained when he introduced the bill to amend § 5037, "During the 7 months following [the] enactment [of the 1984 sentencing law], its *operation in practice* has exposed the need for some technical amendments and other minor adjustments." 131 Cong. Rec. S7399 (daily ed. June 4, 1985) (Statement of Sen. Thurmond) (emphasis added). The record continues:

> The [FJDA] does not now clearly provide that the "good time" provisions applicable to adults are also applicable to juveniles. If terms of incarceration for juveniles are to be made fully determinate . . . *there is little justification for making juvenile sentences more severe than adult sentences*. This amendment *carries forward the current practice* of granting "good time" to juveniles.

131 Cong. Rec. at S7399 (emphasis added). Far from an instruction from Congress to courts not to venture any further than the FJDA's terms expressly provide, the 1986 amendment reflects Congress's desire to make sure that existing sentencing practices maintaining parity between the treatment of adults and juveniles continue. That Congress saw no need to rewrite § 5037 also to include a reference to § 3585 indicates that Congress saw no problem with the FJDA's "operation in practice." That is, it indicates that Congress was satisfied with the BOP's understanding that juveniles received credit for time spent in pre-sentence custody.

### 4. Statutory Purpose

**[13]** The purposes of the statutes at issue confirm that juveniles should be included in, and should benefit from, § 3585. The FJDA creates a separate system of criminal justice for juveniles to "shield[ ]" them from the ordinary criminal justice system and to provide them with "protective treatment

not available to adults accused of the same crimes." *Doe*, 53 F.3d at 1083; *see also Frasquillo-Zomosa*, 626 F.2d at 101 (noting that this is the FJDA's "purpose"). The primary goal of the FJDA is rehabilitative, not punitive; we have thus declared that "a least-restrictive standard for confinement" is "implicit in the structure and purposes of the FJDA sentencing provisions." *Juvenile*, 347 F.3d at 785. This emphasis on rehabilitation and leniency makes it highly unlikely that Congress meant to treat juveniles more harshly than adult offenders.

**[14]** Section 3585 rests on a foundation of basic fairness. "[I]f a person is detained in a pretrial setting, while enjoying the presumption of innocence, it is only fair that the government give him credit for that time at the end of his sentence." *United States v. Wickman*, 955 F.2d 592, 595 (8th Cir. 1992) (Lay, J., dissenting); *see also Campbell v. McGruder*, 580 F.2d 521, 530 (D.C. Cir. 1978) (observing that § 3568 reflects that "it is difficult to distinguish pretrial incarceration from punishment"). A juvenile's entitlement to a presumption of innocence is no weaker than an adult's, and no magic happens simply because juveniles lose their liberty after a civil adjudication, rather than a successful prosecution. The fact remains that Jonah is (and was) in detention, and no amount of semantics — "rehabilitation" versus "punishment," "adjudication" versus "prosecution," "defendant" versus "juvenile delinquent" — can make it otherwise. *See In re Gault*, 387 U.S. 1, 29-30 (1967) ("So wide a gulf between the . . . treatment of the adult and of the child requires a bridge sturdier than mere verbiage . . . .").

The BOP's treatment of juveniles whose status is adjudicated in the District of Columbia illustrates the arbitrariness of its refusal to give Jonah pre-sentence credit for time already spent in incarceration. D.C. Code § 24-431(a), which is based on § 3568, provides that "[e]very person shall be given credit . . . for time spent in custody . . . as a result of the offense for which the sentence was imposed." The BOP,

which computes sentences for D.C. inmates in addition to its federal duties, applies this "jail time credit" against juveniles' sentences just as it does for adults. *See* Bureau of Prisons, *D.C. Sentence Computation Manual*, Program Statement No. 5880.32, at XIV-6 (Jan. 23, 2001). Admittedly, the District's equivalent to the FJDA does not use a different vocabulary to discuss sentencing options for "youth offenders." *See* D.C. Code § 24-803(2). This difference in terminology cannot justify a difference in treatment. If a 15 year-old spends 100 days in pre-sentence custody in a city jail, the BOP gives him credit. If his 100 days are served across the street for a federal violation, the BOP does not, despite the fact that the individual's rehabilitative needs and society's interest in punishment do not differ in the two cases.

When asked to do so at oral argument, the government declined to give a policy rationale for treating juveniles more harshly than adults. Its reluctance is understandable. We can think of no sensible reason why Jonah's liberty, which he lost for almost three years before his culpability was adjudicated, is worth less than a similarly-situated adult's.

## Conclusion

**[15]** We conclude that, when Congress revised § 3585 and the FJDA in 1984, it intended for the BOP to continue to credit juveniles with time spent in pre-sentence custody. Jonah has now been incarcerated for 58 months based on a sentence of 30 months. The district court's decision is reversed, and Jonah's petition for a writ of habeas corpus is granted. Our decision does not affect Jonah's period of supervised release.

**REVERSED.**